UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| JOSE AVILES, | : |
| Plaintiff, | : |
| | : |
| v. | : Case No. 3:19-cv-1140 (SRU) |
| | : |
| NICK RODRIGUEZ, et al., | : |
| Defendants. | : |

# **INITIAL REVIEW ORDER**

Jose Aviles ("Aviles") is incarcerated at Corrigan-Radgowski Correctional Institution ("Corrigan-Radgowski"). He has filed a civil rights action under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, against Warden Nick Rodriguez, Deputy Warden Derrick Molden, Captain Brian Jackson, Captain/Unit Manager Gregorio Robles, Dr. Gerard G. Gagne, Dr. Mark A. Frayne and Mental Health Social Worker William J. Longo. For the reasons set forth below, the complaint is dismissed in part.

**I.    Standard of Review**

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"

*Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.     Facts

Prior to July 2018, Aviles had been housed at Northern Correctional Institution ("Northern") for months on both administrative segregation status and special needs status. *See* Compl. at 6-7 at ¶ 14. During that time, Aviles suffered from borderline personality disorder and anti-social personality disorder and did not receive meaningful mental health care from Dr. Frayne, Dr. Gagne or Social Worker Longo. *See id.* Aviles often informed Dr. Gagne and Social Worker Longo that his indefinite confinement at Northern on both administrative segregation status and special needs status caused him to feel depressed and that he would try to hurt himself if he were not transferred to general population. *See id.* at 7 ¶ 15. Neither Dr. Gagne, nor Social Worker Longo made any attempts to facilitate Aviles's transfer to another facility. *See id.*

In the weeks leading up to July 9, 2018, Aviles exhibited delusional thoughts and/or behavior. *See id.* at 7-8 ¶ 16. He believed that correctional officers were putting medication in his food and throwing rocks at the outside of his cell window. *See id.* He informed Drs. Gagne and Frayne, Social Worker Longo, Captain Robles, Warden Rodriguez and Deputy Warden Molden about his delusional thoughts/observations. *See id.* at 7-8 ¶¶ 16, 18. The defendants did not send Aviles to Garner Correctional Institution to be evaluated to determine whether his confinement on both administrative segregation status and special needs status was exacerbating his mental health disorders. *See id.* at ¶ 17.

2

On July 8, 2018, Aviles cut his leg. *See id.* at 7 ¶ 16. On July 9, 2018, Aviles attempted to commit suicide because of "family issues" and his long-term confinement on administrative segregation status and special needs status. *See id.* at 7 ¶¶ 14, 16. He cut his neck, wrist, chest and arms with a pen that he had flattened and sharpened to a "razor's edge." *See id.* at ¶ 16. In response to that attempt to harm himself, Social Worker Longo ordered that Aviles be transferred to the medical infirmary at Northern and placed him in a cell on behavior observation status. *See id.* at 9 ¶ 19. In the infirmary, a nurse cleaned Aviles's lacerations, applied an antibiotic ointment and covered the lacerations with either steri-strips or bandages. *See id.* at ¶ 25. An officer strip-searched Aviles prior to placing him in the behavior observation cell. *See id.* at 9 ¶ 19. Prison officials prepared a report documenting the incident. *See id.* at 28-38 (Copy of Incident Report – NCI 2018-07-005).

That evening, Aviles still felt suicidal and extremely anxious and threatened to harm himself. *See id.* ¶ 20. Mental health officials consulted with a nurse from Carl Robinson Correction Institution regarding Aviles's condition and the nurse ordered that Aviles receive a dose of Benadryl and an injection of Thorazine. *See id.*

On July 10, 2018, Aviles noticed a piece of metal on the floor next to the toilet in his cell in the infirmary. *See id.* at ¶ 21. The piece of metal was a broken razor blade. *See id.* Aviles used the broken razor to cut himself. *See id.* at 10 at ¶ 22. A nurse treated Aviles for two lacerations. *See id.* Prison officials prepared a report documenting the incident. *See id.* at ¶¶ 65-67, 69-71 (Copy of Incident Report – NCI 2018-07-017).

Prison officials issued Aviles a disciplinary report associated with his attempt to harm himself on July 9, 2018, and another disciplinary report associated with his attempt to harm

himself on July 10, 2018. *See id.* at ¶ 24. Social Worker Longo dismissed the first report and Deputy Warden Molden dismissed the second disciplinary report. *See id.*

After prison officials released Aviles from the medical infirmary and returned him to his housing unit, he began to file multiple grievances regarding the two incidents in which he attempted to harm himself. *See id.* at 11-14 ¶¶ 25-31. The plaintiff also sent written requests to Captain Jackson to preserve video footage of the incident that had occurred on July 9, 2018 and the incident that had occurred on July 10, 2018. *See id.* at 14 ¶ 32. When Aviles spoke to Captain Jackson about the videotape preservation requests, he denied having received the requests and directed Aviles to re-submit the requests. *See id.* On October 10, 2018, Aviles filed a grievance regarding the video preservation requests. *See id.* Warden Rodriguez denied the grievance on the ground that Aviles had not submitted any requests to preserve the video footage to the incidents that had occurred on July 9, 2018 and July 10, 2018. *See id.* at 14-15 ¶ 33.

### III. Discussion

Aviles asserts claims under 42 U.S.C. § 1983 that the defendants were deliberately indifferent to his safety and mental health needs in violation of the Eighth Amendment and a claim that the defendants violated his rights under the ADA. Aviles sues the defendants in both their individual and official capacities. He seeks declaratory and injunctive relief from the defendants in their official capacities and monetary damages from the defendants in their individual capacities.

#### A. ADA

Aviles claims that the defendants violated his rights under the ADA by confining him at Northern on both administrative segregation status and special needs status. Title II of the ADA

provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Second Circuit has held that a plaintiff must meet three elements to state a claim under the ADA: "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusions or discrimination was due to his disability." *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003).

An inmate may not maintain an ADA claim against a state actor in his or her individual capacity. *See Garcia v. S.U.N.Y. Health Services Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (Title II of the Americans with Disabilities Act does not provide "for individual capacity suits against state officials."). Accordingly, the ADA claim asserted against the defendants in their individual capacities is dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

An inmate may, however, bring a Title II ADA claim against a state or its agent in its official capacity for injunctive relief. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (holding that Title II ADA suits and Rehabilitation Act suits for prospective injunctive relief may be brought under *Ex parte Young* against state officers in their official capacities). In addition, under certain circumstances, an inmate may assert a Title II ADA claim for monetary damages against a state or an individual in his or her official capacity. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) ("insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II

5

validly abrogates state sovereign immunity"). Thus, I consider Aviles's ADA claims for monetary damages and injunctive relief against the defendants in their official capacities.

Aviles's only reference to the ADA is in his description of legal claims. *See* Compl. at 17. Even if I were to assume that Aviles suffered from a disabling mental health disorder or disorders that interfered with a major life activity, he has not alleged facts to meet the other elements of an ADA claim. Aviles does not allege that the defendants excluded him from or denied him the benefits of any services, programs or activities because of his disability. Rather, he alleges that the defendants denied him treatment for his disabling mental health disorders, including refusing to transfer him from special needs/administrative segregation status, which he claims exacerbated his mental health disorders. *See Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) ("Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical [or mental health] treatment, but do not allege that the inmate was treated differently because of his disability.") (citing, *inter alia*, *Nails v. Laplante,* 596 F. Supp. 2d 475, 481–82 (D. Conn. 2009) (dismissing inmate's ADA claim, which focused on inadequate medical care, because the complaint "d[id] not include any non-conclusory allegations of discriminatory animus or ill will based on his disability and identifie[d] no program he could not participate in or any service that was denied as a result of his disability")). Nor has Aviles asserted that the defendants discriminated against him or treated him differently because of his mental health disorders. *See McTerrell v. Koenigsmann*, 2019 WL 2511426, at *17 (W.D.N.Y. June 18, 2019) ("Additionally, Plaintiff does not allege that he was treated any differently from inmates who acted similarly to him but were not diagnosed with anti-personality disorder.") (citing, *inter alia, Atkins v. County of Orange*, 251 F. Supp. 2d 1225,

1232 (S.D.N.Y. 2003) ("Plaintiffs do not allege that the mentally disabled are the only prisoners subjected to [keeplock isolation] while the non-mentally disabled prisoners are excluded therefrom.")). Aviles fails to state a claim against the defendants under the ADA. The ADA claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### B. Section 1983

Aviles contends that the defendants were deliberately indifferent to his serious mental health needs prior to the incident that occurred on July 9, 2018 and were deliberately indifferent to his safety in connection with the incident that occurred July 10, 2018. Aviles alleges that Captain Jackson violated his constitutional rights by ignoring his requests to preserve video footage of the two incidents.

#### 1. Injunctive and Declaratory Relief

Aviles seeks a declaratory judgment that the defendants violated his Eighth Amendment rights. Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Colabella v. American Institute of Certified Public Accountants*, 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). Thus, it operates in a prospective manner to allow parties to resolve claims before either side suffers significant harm. *See In re Combustion Equip. Assoc. Inc.*, 838 F.2d 35, 37 (2d Cir. 1988).

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court held that an exception to the Eleventh Amendment's grant of sovereign immunity from suit existed to permit a plaintiff to sue a state official acting in his or her official capacity for prospective injunctive relief for continuing violations of federal law. *Id*. at 155–56. The exception to Eleventh Amendment immunity,

7

however, "does not permit judgments against state officers declaring that they violated federal law in the *past*." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993) (emphasis added); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief.").

To the extent that Aviles seeks a declaration that the defendants violated his constitutional rights in the past, the request is barred by the Eleventh Amendment. The request for a declaratory judgment is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Aviles seeks injunctive relief in the form of an order that the defendants send him to an outside mental health specialist for an evaluation and refrain from placing him in solitary confinement unless they afford him due process and determine that it is safe.

The Second Circuit has held that an inmate's request for prospective injunctive relief from correctional staff in connection with conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged from that institution, is transferred to a different institution or has received the relief requested. *See Shepard v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief.") (citation and internal quotation marks omitted); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"). The allegations in the complaint relate to conditions at Northern and the defendants are all employees at Northern. As indicated above, Aviles is currently confined at Corrigan-Radgowski.

Because Aviles is no longer confined at Northern, the requests seeking injunctive relief

from the defendants who are all employees at Northern, are moot. The requests for injunctive relief are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 2. Deliberate Indifference to Safety or Health

Aviles alleges that the defendants were deliberately indifferent to his health or safety when they placed him in a cell on July 9, 2018 that had a broken razor blade in it. In the context of a prisoner's conditions of confinement, those conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs . . . or the minimal civilized measure of life's necessities." *Id.*

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need []" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires

9

that the inmate allege that the defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Aviles alleges that on July 10, 2018 he found a piece of a broken razor blade in the cell in the infirmary and used that piece of razor blade to cut himself. A nurse treated him for two superficial lacerations that he had inflicted using the piece of razor blade. There are no allegations that any defendant placed Aviles in the cell in the infirmary. Rather, Aviles alleges that officers placed him in the observation cell pursuant to the order of Social Worker Longo. Furthermore, Aviles has not asserted facts to suggest that any defendant knew that a piece of a razor blade had been left in the cell prior to his placement in the cell. Nor are there any allegations to suggest that any defendant was responsible for cleaning or checking the cell prior to Aviles's placement in the cell. Thus, Aviles has not alleged a plausible claim that any defendant knew of a serious risk of harm to his health and disregarded that risk. Thus, the Eighth Amendment deliberate indifference to health or safety related to the injuries suffered by Aviles on July 10, 2018 is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Aviles asserts a separate claim that is related to his long-term confinement on administrative segregation status and special needs status at Northern, which he describes as "solitary statuses." Compl. at 7 ¶ 14. He contends that the defendants have subjected him to conditions of confinement that have exacerbated his mental health disorders and that he needs to be evaluated by a qualified mental health specialist.

There are no allegations regarding the specific conditions endured by Aviles during his confinement at Northern, how the conditions differ from the conditions in general population or

10

why the conditions exacerbated his mental health disorders. Aviles claims that he made Dr. Gagne and Social Worker Longo aware that being at Northern made him depressed and that he might harm himself if they did not transfer him to general population. Without articulating the specific conditions that allegedly caused the exacerbation of his mental health disorders or his behavior in trying to harm himself, I cannot conclude that Aviles has plausibly met the objective prong of an Eighth Amendment conditions of confinement claim. Accordingly, this Eighth Amendment claim is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

### 3. Eighth Amendment – Deliberate Indifference to Mental Health Needs

The Eighth Amendment prohibits "'deliberate indifference'" by medical providers to an inmate's "'serious medical needs'" as well as an inmate's need for mental health care. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To state a claim for deliberate indifference to a serious medical or mental health need, a plaintiff must meet a two-pronged test. Under the objective prong, the inmate's medical or mental health need/condition must be "a serious one." *Brock v Wright*, 315 F.3d 158, 162 (2d Cir. 2003). The second prong is subjective. Under that prong, the plaintiff must allege that the medical staff member or prison official "act[ed] or fail[ed] to act while *actually aware* of a substantial risk that serious inmate harm w[ould] result." *Spavone*, 719 F.3d at 138 (internal quotation marks and citation omitted). Subjective awareness may be proven "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Aviles contends that all defendants were aware of his serious mental health needs prior to the July 9, 2018 incident involving his attempt to kill himself using a homemade knife. In the weeks leading up to the attempt to harm himself, Warden Rodriguez, Deputy Warden Molden,

11

Captain Robles, Drs. Frayne and Gagne and Social Worker Longo became aware of that Aviles had experienced delusional thoughts. Aviles also informed Dr. Gagne and Social Worker Longo that the conditions at Northern had caused him to become depressed and that he would harm himself if they did not transfer him to general population. Neither Dr. Gagne, nor Social Worker Longo addressed Aviles's complaints or concerns.

Aviles has plausibly alleged that prior to July 9, 2018, Warden Rodriguez, Deputy Warden Molden, Captain Robles, Drs. Frayne and Gagne and Social Worker Longo were aware of a potential risk of harm to Aviles's health, but they disregarded that risk of harm by failing to provide him with a mental health examination or treatment or facilitate the provision of a mental health examination or treatment for him. The claim of deliberate indifference to mental health needs will proceed against Rodriguez, Molden, Gagne, Frayne, Robles and Longo in their individual capacities.

Aviles has alleged no facts to suggest that prior to his attempt to harm himself on July 9, 2019, Captain Jackson knew about or had heard his delusional statements or assertions that he was depressed. Thus, Aviles has not plausibly alleged that Captain Jackson was aware of a serious risk of harm to his health and disregarded that risk. The Eighth Amendment deliberate indifference to mental health needs claim against Captain Jackson is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

### 4. Failure to Preserve Videotapes

Aviles alleges that Captain Jackson ignored his requests to preserve video footage of the incident that occurred on July 9, 2018 and the incident that occurred on July 10, 2018. Attached to the complaint is a copy of the grievance filed by Aviles regarding the preservation of the video

footage.  *See* Compl. at 62-63.  On October 19, 2018, Warden Rodriguez stated that although Captain Jackson had not received any preservation requests, video footage of both incidents had been preserved in accordance with Administrative Directive 6.6.  *See id.* at 34-37, 63.  Furthermore, Aviles has not alleged how the failure of Captain Jackson to respond to his requests to preserve the video footage of the incidents violated his federally or constitutionally protected rights.  The allegation against Captain Jackson regarding the preservation of the video footage of the July 2018 incidents is dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).

**It is hereby ordered that:**

**(1)** The claims for injunctive and declaratory relief, the claim against Captain Jackson regarding the preservation of video footage of the July 2018 incidents, the Eighth Amendment claim of deliberate indifference to safety related to Aviles's confinement in a cell in the infirmary on July 10, 2018, and the ADA claim are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Eighth Amendment claim of deliberate indifference to mental health needs against Captain Jackson and the Eighth Amendment claim that conditions at Northern have exacerbated Aviles's mental health disorders are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  The Eighth Amendment deliberate indifference to mental health needs claim related to the time period prior to the July 9, 2018 incident will proceed against Warden Rodriguez, Deputy Warden Molden, Captain Robles, Dr. Frayne, Dr. Gagne and Social Worker Longo in their individual capacities.

I will permit Aviles thirty (30) days to file an amended complaint regarding the Eighth Amendment claim that his exposure to certain conditions during his confinement at Northern on

administrative segregation status and special needs status exacerbated his mental health disorders. Any amended complaint must include the type and nature of the condition or conditions that Aviles experienced, how the condition or conditions made his mental health disorders worse and who was responsible for the condition or conditions. If Aviles chooses not to file an amended complaint within the time specified, the case will proceed only with the Eighth Amendment deliberate indifference to mental health needs claim related to the time period prior to the July 9, 2018 incident.

**(2)** Within twenty-one (21) days of this Order, the Clerk shall verify the current work addresses of: Warden Nick Rodriguez, Deputy Warden Derrick Molden, Captain Gregorio Robles, Dr. Mark A. Frayne, Dr. Gerard G. Gagne and Social Worker William J. Longo and mail a copy of the complaint, this order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** Defendants Rodriguez, Molden, Gagne, Frayne, Robles and Longo shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

**(4)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

**(5)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(6)** The Clerk shall send a copy of the complaint and this order to the Connecticut Attorney General and to the Department of Correction Legal Affairs Unit.

**(7)** The Clerk shall enter the Standing Order Re: Initial Discovery concerning inmate cases initiated by self-represented inmates and shall send a copy to the plaintiff.

So ordered

Dated at Bridgeport, Connecticut, this 4th day of November 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge